## PRESSON *v.* VAIL COOPERAGE COMPANY.

### Opinion delivered October 30, 1922.

1. MASTER AND SERVANT—INJURIES TO EMPLOYEES OF CARRIER—DEFENSES.—Acts 1911, No. 88, eliminating the defenses of contributory negligence and assumed risk in actions for personal injuries by employees of common carriers, did not enlarge the general definition of a "common carrier" so as to include logging railroads.

2. CARRIERS—DEFINITION.—In order to constitute one a common carrier, his business must be regular and customary and of such a general and public nature that a person carrying it on is

bound to convey goods of all persons indifferently who offer to pay for the transportation; an occasional undertaking to carry goods not being sufficient.

3. MASTER AND SERVANT—QUESTIONS FOR JURY.—In an employee's action for injuries received while attempting to couple a standard flat-car to an engine, the question whether the defendant operating a logging railroad was a "common carrier," and if so whether defendant was negligent in failing to furnish properly equipped engine and necessary appliances *held* for the jury.

Appeal from Greene Circuit Court, First Division; *S. V. Neely,* Judge; reversed.

*R. E. Fuhr, J. M. Futrell* and *Jeff Bratton,* for appellant.

1. As a matter of law, act 88, Acts 1911, § 4, C. & M. Digest, § 7141, appellee is a common carrier, and the court should have so declared.

2. If it be conceded, for the sake of argument, that the definition of a common carrier remains as defined prior to the passage of that act, then it was a question for the jury, under proper instructions, whether or not appellee is a common carrier. 100 Ark. 37; 2 Ga. 349; Angell on Carriers, § 870; Hutchinson on Carriers, § 68; 5 Rawle (Pa.) 179; 10 Ohio 145; 47 L. R. A. 383; 158 N. Y. 34.

3. The case should have gone to the jury under Crawford & Moses' Digest, § 8575, which is cumulative to laws existing at the time of its enactment, abolishes the fellow-servant doctrine in suits against railroads, and makes contributory negligence no longer a bar to recovery unless greater than that of the defendant.

4. Appellee was liable under the common law in failing to furnish appellant suitable tools and instruments for the work in which he was engaged, and this was a question of liability that should have been submitted to the jury. As to the question of assumption of risk, the evidence fails to show that the appellant knew and appreciated the danger; at any rate there was a question for the jury on that issue. 54 Ark. 289; 67 *Id.* 209; 107 *Id.* 512; 116 *Id.* 284.

*Block & Kirsch,* for appellee.

1.   There is nothing in § 4, act 88, Acts 1911, relied on by appellant, that changes the meaning of the term "common carrier" as defined by this court, but only makes specific the fact that one engaged in the business of common carrier, as that term is generally defined, comes within the purview of the act. For definition, see 100 Ark. 37; 123 *Id.* 50; 4 R. C. L. 546. Under the proof in this case appellee is not a common carrier, and the above statute is not applicable.

2.   Appellant assumed the risk. 134 Ark. 491; 135 *Id.* 563; 82 *Id.* 11; 44 *Id.* 293; 56 *Id.* 232; 161 Mass. 153.

HUMPHREYS, J. This suit was instituted by appellant against A. J. Vail, doing business under the name of Vail Cooperage Company, to recover damages in the sum of $3,000 for an injury received while attempting to couple a standard flat-car to an engine, through the alleged negligence of appellee. Appellant alleged that he was an employee of appellee as fireman and brakeman, that appellee was a common carrier, and as such negligently failed to supply him with sufficient machinery to perform his duty, and negligently furnished him a defective engine and other appliances and equipment. The allegations bring the suit within act 88 of the Acts of the General Assembly of 1911, which was entitled, "An act regulating liability of employers for injuries to employees."

The cause was submitted upon the pleadings and testimony, at the conclusion of which the court, over the objection and exception of appellant, peremptorily instructed the jury to return a verdict for appellee. The jury complied with the direction, and the judgment was rendered in accordance therewith.

From the instructed verdict and judgment an appeal has been duly prosecuted to this court. Appellants insist that the court erred in finding, as a matter of law, that appellee was not a common carrier within the meaning of act 88, Acts of the Legislature of 1911. It is ar-

gued that section 4 of the act, now section 7141 of Craw-
ford & Moses' Digest, changes the meaning of "common
carrier" as defined by this court, so as to make a person
operating a train or log-road, upon rails or tracks, in
whole or in part in this State, a "common carrier" or
"common carrier by railroad," whether he operates it
as owner, contractor, lessee, mortgagee, trustee, assignee,
or receiver. The majority of the court do not think the
general definition of a "common carrier" or a "common
carrier by railroad" was modified or changed by the
act. Had the Legislature intended to enlarge the gen-
eral definition of "common carrier," so as to include
logging railroads, it would not have used the words
"common carrier" in the defining clause. The word can-
not be defined by the use of the word itself. The in-
tention of the act was to bring common carriers, as gen-
erally defined, operating railroads wholly in this State,
under the terms and provisions of the act. In other
words, the intention was to impose liability upon any
common carrier, operating a railroad in whole or in
part in this State, for personal injuries resulting to an
employee occasioned through the negligence of em-
ployer or its representatives, in the various ways set out
in the act, even though the employee was guilty of con-
tributory negligence, or knew of the dangers incident to
the master's negligence. The act eliminated the defenses
of contributory negligence and assumed risks in actions
brought under its provisions. Again, appellant argues
that the testimony introduced by him not only tended to
show that appellee was a common carrier within the gen-
eral definition, but also tended to show negligence on the
part of appellee as defined by the act. A general defini-
tion of "common carrier" was correctly announced in
the case of *Arkadelphia Milling Co.* v. *Smoker Merchan-
dise Co.,* 100 Ark. 37. It is as follows: "In order to con-
stitute one a common carrier, the business as such must
be regular and customary in its character, and not casual
only. An occasional undertaking to carry goods will not

make one a common carrier. But the business of carrying must be conducted as a business, and must be of such a general and public nature that a person carrying it on is bound to convey goods of all persons indifferently who offer to pay for the transportation thereof.'' The record reflects that appellee owned and operated a railroad of standard gauge, with steel rails laid on crossties; that he owned and used three engines, ''dollie'' and flat-cars, also used standard flat-cars of a connecting line; that the railroad was about ten miles in length, including two branches; that he operated the railroad primarily to haul logs to his mill at Marmaduke, but he hauled freight for others.

Appellant testified, in substance, that the business of the railroad was to haul for people out on the line and for people in town; that they hauled logs, lumber, groceries, hay and a general routine of stuff that came to be hauled, and received pay for hauling same.

J. C. Golden testified that, as manager of the Melon Growers' Association, he shipped twenty or thirty cars of melons over the railroad owned by Vail, for which he paid $15 a car.

Will Carpenter testified that he shipped from fifteen to twenty cars of hay and corn over the Vail railroad in one year, for which he paid $15 a car.

Alfred Moore, Henry Vanderbuilt, Walter Chaney, Nathan Cohn and Ed Franks testified that the company hauled logs for itself and logs, lumber and freight for others.

Floyd Deck, who was the engineer for the company during a period of ten months, testified that, as far as he knew, Vail did a general hauling business over his railroad.

The testimony detailed above tended to show that the hauling was indiscriminately done, and was of a public nature. Testimony was introduced by appellee to the contrary.

Under the testimony, the question of whether the Vail Cooperage Company was a "common carrier" became a question of disputed fact, and should have been submitted to the jury for determination.

The testimony introduced by appellant tended to show that the injury was caused by the failure of appellee to furnish a properly equipped engine and necessary appliances to couple a standard flat-car to the engine. The statute made it negligence for a "common carrier," operating a railroad upon rails or tracks, not to do this, and the question of whether the company was negligent in this regard should have been submitted to the jury along with the other question of whether it was a "common carrier."

On account of the error indicated, the judgment is reversed and the case remanded for new trial.

Mr. Justice HART concurs in this opinion upon the ground that the purpose and intent of the statute was to make logging railroads, carrying freight for others, common carriers, in matters of injury to its employees, without requiring injured employees to make proof of the character of business done by them.

Mr. Justice SMITH dissenting.