MASON *v.* INTERCITY TERMINAL RAILWAY COMPANY.

Opinion delivered May 7, 1923.

1. STATUTES—RULE OF EJUSDEM GENERIS APPLIED.—The rule that where a statute enumerates specific classes and also uses a general term, the latter term is restricted to the specific classes applies whether the general term follows or precedes the specific terms.

2. STATUTES—RULE OF EJUSDEM GENERIS.—The rule of *ejusdem generis* must be given a reasonable rather than an inflexible construction, so as to aid and not to thwart the discovery of the legislative intent.

3. STATUTES—RULE OF EJUSDEM GENERIS.—Where the detailed enumeration embraces all the things capable of being classed as of their kind, and general words are added, they must be applied to things of a different kind from those enumerated.

4. RAILROAD COMMISSION—AUTHORITY TO REGULATE JITNEY BUSSES.—Under Acts 1921, p. 177, § 5, conferring on the Railroad Commission jurisdiction of "all matters pertaining to the regulation and operation of all common carriers, railroads, express companies," etc., the Railroad Commission is authorized to regulate "jitneys" or "jitney" busses operating as public carriers outside of or between municipalities.

Appeal from Pulaski Chancery Court; *J. E. Martineau*, Chancellor; affirmed.

*Harry H. Myers*, for appellants.

The act creating the Arkansas Railroad Commission abolished the Arkansas Corporation Commission, which had jurisdiction of "vehicles of all kinds engaged in the transportation of freight and passengers," and expressly conferred jurisdiction on the Railroad Commission by § 5, act 124, Acts General Assembly 1921, purposely omitting therefrom the clause above quoted. The Railroad Commission is therefore without authority to regulate and control motor busses doing intercity business. 112 Ark. 440. "Common Carriers" defined. § 1, art. 17, Constitution. Sec. 7121, C. & M. Digest; act 124 Acts 1921. The doctrine *ejusdem generis* applies in the construction of said act 124, and it only includes the kinds of common carriers mentioned and none others,

except of the same kind of character. 95 Ark. 114. 73 Ark. 600; 74 Ark. 528; 73 *Id.* 600; 90 Ark. 4; 91 Ark. 245. The Legislature had no intention of including "vehicles of all kinds and character" as were included in the repealed act, and left out said clause therefore, but did include pipe line, electric lighting, hydro-electric, and water companies, which were not in the repealed act. Jitney busses are common carriers of course (121 Ark. 611) but certainly not of the same kind or class as those enumerated in act 124. 104 N. E. 165. Powers of Railroad Commission construed in 47 So. 969. Cities have power to regulate motor vehicles within their limits. 120 Ark. 226; 121 Ark. 610; 130 Ark. 334. The general motor vehicle act, chapter 126, C. & M. Digest, controls motor vehicles, taxicabs, jitneys, etc., operating outside cities and towns. Sec. 7429, C. & M. Digest; 121 Ark. 610.

*Rose, Hemingway, Cantrell & Loughborough,* for appellee.

Jitneys are subject to regulation by the State. 121 Ark. 606. Regulated elsewhere as common carriers and public utilities coming within the police power of the State. 150 Pac. (Calif.) 348; 85 S. E. (W. Va.) 781; 178 S. W. (Tex.) 537; 178 S. W. (Tex.) 6; 179 S. W. (Tenn.) 631; 70 So. (La.) 212. Court has held under act 134 of Acts of 1911, motor vehicle law, that a municipal corporation is without authority to exact a license fee of a jitney bus hauling passengers from a point outside the city through city and to a point beyond. 130 Ark. 334. This left them without regulation after purchasing a State license, and power was given by the Corporation Commission Act for their regulation, and upon its repeal by the act creating the Arkansas Railroad Commission. Act 124, Acts 1921, §§ 2, 3 and 5. Jitney busses are common carriers and included within the provisions of the said act, which relates to "all common carriers" and the rule of *ejusdem generis* does not so limit the meaning of the act as to prevent their regulation. 19 C. J. 1255; 95 Ark. 116; 32 Ark. 464; 100 Ark. 75; 109 Ark.

556.  Said act 124 expressly provides that the commission and municipal councils shall have jurisdiction over *all* common carriers.

McCULLOCH, C. J.   The decision of this case calls for a determination of the question of the authority of the Railroad Commission of the State, under existing statutes, to regulate vehicles commonly known as "jitneys," or "jitney busses," operating as public carriers outside of or between municipalities.  A brief outline of the powers conferred by the lawmakers in this respect is necessary.

The Arkansas Corporation Commission was created by the General Assembly of 1919, and in one of the sections of the statute creating the Commission its jurisdiction was defined to extend to and include "common carriers, railroads, street railroads, express companies, all car companies, freight lines, toll bridges, ferries and steamboats, and vehicles of all kinds engaged in the transportation of freight and passengers."   Crawford & Moses' Digest, § 1618.   The same section also included, as being within the jurisdiction of the Commission, telegraph and telephone companies, pipe-line companies for the transportation of oil, gas and water, all gas companies, hydro-electric companies for the generation and transmission of light, heat, power and water.

The General Assembly of 1921 (Acts of 1921, p. 177) abolished the Arkansas Corporation Commission and substituted therefor the Arkansas Railroad Commission, the declared purpose being to transfer from the former "all its proper functions" to the latter.  This is decleared in the first section of the act, which reads as follows:

"Section 1.   That the intent of this act is that the present Arkansas Corporation Commission be abolished and that all its proper functions, not elsewhere herein delegated, be transferred to the Arkansas Railroad Commission as herein constituted."

Section 2 of the statute provides that the Railroad Commission "shall have and possess all of the powers and duties provided in this act, and all such other powers as were possessed by and exercised by the Railroad Commission of Arkansas * * * * which are not in conflict with the terms of this act."

Section 3 defines the jurisdiction of the Railroad Commission as follows:

"Section 3. That section 5 of the said act No. 571, General Acts of the General Assembly of the State of Arkansas of 1919, above more particularly referred to, be and the same is hereby amended to read as follows:

"Section 5. Jurisdiction. The jurisdiction of the Commission shall extend to and include all matters pertaining to the regulation and operation of—

"(a) All

"Common carriers,

"Railroads,

"Express companies,

"Car companies,

"Freight lines,

"Toll bridges,

"Ferries,

"Steamboats,

"Street railroads,

"Telegraph companies,

"Telephone companies,

"Pipe-line companies for transportation of oil, gas and water,

"Gas companies,

"Electric lighting companies, and other companies furnishing gas or electricity for light, heat or power purposes,

"Hydro-electric companies for the generation and for transmission of light, heat or power,

"Water companies, furnishing water within municipalities for municipal, domestic or industrial use.

"*Provided, however,* that nothing herein shall vest said Commission with jurisdiction as to any rate, charge, rule, regulation, order, hearing, investigation, or other matter pertaining to the operation within the limits of any municipality of any street railroad, telephone company, gas company, pipe-line company for transportation of oil, gas or water, electrical company, water company, hydro-electric company or other company operating a public utility or furnishing public service as to which jurisdiction may be elsewhere conferred in this act upon any municipal council or city commission; notwithstanding, however, the jurisdiction of the municipality as to the above matters within the limits of such municipality, the said Arkansas Railroad Commission shall have and is hereby delegated the authority and duty to require all utility companies now furnishing public service within the limits of any municipality to furnish and continue furnishing such service to such municipality, though the right of regulation of such utility as to rates and all other matters within such municipality is herein elsewhere conferred upon the municipal councils or city commissions, subject to right of appeal to the courts.

"*Provided, further,* that nothing herein shall vest said Commission with jurisdiction as to any improvement district or municipality furnishing gas or electricity for any purpose.

"And for the purpose of this act, and in the construction of this act, every person, firm, association, company, partnership or corporation or other organizations engaged in the operation of any public utility above indicated shall be deemed to be a company within the meaning of this act.

"(b)    All other jurisdictions, if any, possessed by the Arkansas Railroad Commission under the laws of Arkansas, in force on March 31, 1919."

It will be observed that the phrase, "and vehicles of all kinds engaged in the transportation of freight and passengers," in the former statute defining the jurisdic-

tion of the Corporation Commission, is omitted from the last statute defining the jurisdiction of the Railroad Commission, and the contention of counsel for appellant is that this indicates the legislative will to withdraw the power in this respect, and that under the familiar rule in regard to the use of general words in connection with specific words of description being confined to things of the same kind or species (*ejusdem generis*) the words "common carrier" in the last statute do not have the effect of extending the jurisdiction beyond the specific things mentioned so as to include other vehicles, such as those involved in the present controversy.

The rule of interpretation in regard to *ejusdem generis* has always found its application, so far as we can ascertain, to general terms subjoined to other specific words of description of the same generic class, and we have not found an instance where the question of its application was involved in regard to preceding words, as in the present instance. It is contended by counsel for appellee that the rule of interpretation is applicable solely to subjoined words of description, but we are unable to discover any reason for distinction in the application of the rule. We see no reason why the rule should not be applied to preceding as well as to subjoined words of general description, and we think that the effect would be the same if, instead of prefacing with the words "common carrier," those words had been subjoined to the other descriptive words used. The effect is the same, we think, as if there had been subjoined the words "other common carriers." And the question then arises whether or not, taking the statute as a whole, the generic term should be confined in its application to things of the specific kinds mentioned. Many definitions of the rule in regard to words of general description used in this way are found in the decisions of the court, but nowhere is the rule more clearly expressed than in the opinion of this court, delivered by Judge HEMINGWAY, in the case of *Wallis* v. *State*, 54 Ark. 611, as follows:

"The rule invoked is by no means of universal application, and its use is to carry out, not to defeat, the legislative intent. Where an act attempts to enumerate the several species of a generic class, and follows the enumeration by a general term more comprehensive than the class, the act will be restrained in its operation because it is discerned that the Legislature so intended; but where the detailed enumeration embraces all the things capable of being classed as of their kind, and general words are added, they must be applied to things of a different kind from those enumerated. For the rule does not require the entire rejection of general words, and is to be used in harmony with the elemental canon of construction, that no word is to be treated as unmeaning if a construction can be found that will preserve it and make it effectual."

There are decisions of other courts affirming the doctrine that the rule of *ejusdem generis* is one of construction, to be applied in aid of the ascertainment of the legislative intent, and it cannot be invoked to thwart the obvious legislative will. In other words, it has been often held that the rule must be given a reasonable, rather than an inflexible, application, so as to aid and not to thwart the discovery of the legislative intent. Cases on this subject are collated in Words and Phrases, vol. 2, second series.

Now, it will be observed that the specific words of description found in this statute are definite and comprehend all of the things of that particular class described by the specific words used, and if we give no other effect to the use of the words "common carrier," it would be meaningless and have no force at all in the statute. The case falls, we think, within that part of the definition given by Judge HEMINGWAY, that "where the detailed enumeration embraces all the things capable of being classed as of their kind and general words are added, they must be applied to things of a different kind from those enumerated." This view of the effect of the use

of the words "common carrier" finds support in the other section which expressly declares the intention of the Legislature to confer upon the Railroad Commission all of the powers theretofore possessed by the Corporation Commission, and the omission from the new statute of certain words of description found in the old statute constitutes a mere change of phraseology without evincing any attempt to change the extent of the powers to be conferred. The lawmakers evidently intended to use the broadest terms to express the delegation of power to the Railroad Commission for the purpose of regulating all public carriers and public utilities, except those operating wholly within municipalities.

Our conclusion therefore is that the power exercised by the Railroad Commission was within the jurisdiction conferred by the Legislature, and that the chancery court was correct in so deciding.

Decree affirmed.

HART, J., (concurring). Subdivision (a) of § 1618 of Crawford & Moses' Digest provides that the jurisdiction of the Corporation Commission shall extend to and include "common carriers, railroads, * * * and vehicles of all kinds engaged in the transportation of freight and passengers." This act was passed by the Legislature of 1919. The present act was passed by the Legislature of 1921. See General Acts of 1921, p. 177.

Subdivision (a) of § 5 of this act provides that the jurisdiction of the Railroad Commission shall extend to and include all matters pertaining to the regulation and operation of "all common carriers, railroads," etc.

It will be noted that the phrase, "and vehicles of all kinds engaged in the transportation of freight and passengers," is omitted from the act of 1921. Now it seems that this phrase, in its broadest signification, would include private as well as public or common carriers engaged in the transportation of freight and passengers. Recognizing this, the Legislature of 1921 properly left out this phrase and confined the Railroad

Commission to the regulation of common carriers. This is shown by the fact that it placed the word "all" before common carriers in the beginning of subdivision (a), and indicates that it intended that the Railroad Commission should regulate all common carriers, and that its regulation should not extend to private carriers at all.

Therefore I concur in the judgment.