**SMITHERMAN & McDONALD, Inc., et al. v. MANSFIELD HARDWOOD LUMBER CO.**

(District Court, W. D. Arkansas, E. D. June 9, 1925.)

No. 6622.

**1. Carriers ⊕⊃5 — Not essential to jurisdiction of state Railroad Commission over carrier that latter be an incorporated railroad.**

Under Crawford & Moses' Dig. Ark. § 1618, conferring jurisdiction on the state Railroad Commission over "common carriers * * * and vehicles of all kinds engaged in the transportation of freight and passengers," it is not essential to such jurisdiction that a carrier be an incorporated railroad engaged as such.

**2. Carriers ⊕⊃3, 4—"Common carrier" and "private carrier" defined.**

A "common carrier" is one who undertakes for hire to transport goods for such as choose to employ him, while a "private carrier" is one who, without being engaged in the business of carrying as a public employment, undertakes to deliver goods in a particular case for hire or reward.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Common Carrier; Private Carrier.]

**3. Carriers ⊕⊃4—Carrier cannot avoid status as common carrier by insisting on private contracts with shippers.**

·A corporation which holds itself out to the public as ready to transport freight for any one who offers it cannot escape liability as a common carrier by insisting on a private contract with the shipper.

**4. Carriers ⊕⊃4 — Classification as common carrier not dependent on authority to act as such.**

In determining whether one is a common carrier or a public utility, courts will be governed, not by whether it is authorized to be such, but by whether it elected to act as a common carrier.

**5. Carriers ⊕⊃5—Lumber company held subject to state regulation as "common carrier."**

A lumber company, which owned and operated a railroad for transportation of its own products, but later extended it into an oil field and held itself out as willing to carry any freight offered under private contract, held, a common carrier, and subject to the jurisdiction of the Arkansas Railroad Commission, though not authorized by its charter to operate as a common carrier.

Appeal from Arkansas Railroad Commission.

Proceeding before the Arkansas Railroad Commission by Smitherman & McDonald, Inc., and others, against the Mansfield Hardwood Lumber Company. From an order of the Commission, the Lumber Company appealed, and the proceeding was removed to the federal court. Affirmed.

Henry Moore, Jr., of Texarkana, Ark., for appellant.

McRae & Tompkins, of Prescott, Ark., and Thos. C. McRae and Brooks Hays, Asst. Attys. Gen., of Arkansas, for Railroad Commission and appellees.

TRIEBER, District Judge. This is an appeal from an order of the Arkansas Railroad Commission requiring the appellant to establish reasonable freight rates and to maintain reasonable facilities for shipping all commodities over its line to and from the oil fields, on its line of railroad to the junction of the appellant's line with the Missouri Pacific Railroad at Reader, Ark., and to file annual reports with the Arkansas Railroad Commission as provided by law. The order is based on the following findings of the Railroad Commission:

"Now on this 15th day of April, 1925, the commission after having carefully considered the evidence in this case finds that the defendant is a corporation engaged in the operation of a public utility, and that it maintains and operates a line of standard gauge railroad from Reader, Ark., to and into the oil field in Nevada county, Ark., a distance of about 23 miles, and that it is, and since about July 1, 1924, has been, engaged

as a common carrier in carrying freight for hire, and that it is engaged in both interstate and intrastate commerce, and that as far as intrastate commerce is concerned it is subject to the jurisdiction of this Commission. The defendant is therefore ordered, within 30 days after the service of this order, to establish reasonable freight rates and furnish rate sheets for intrastate traffic on its line, and also to maintain reasonable facilities for all commodities over its line to and from the oil field to the junction of the defendant with the Missouri Pacific Railroad at Reader, Ark. It is also ordered to file annual reports with the Arkansas Railroad Commission as provided by law."

The appeal from this order was taken to the circuit court of Pulaski county, as provided by the law of the state of Arkansas, and by the respondent removed to this court on the ground that the order deprives it of its property without due process of law, in violation of the Fourteenth Amendment to the Constitution of the United States.

Section 1618, C. & M. Digest of the Statutes of Arkansas, confers on the Corporation Commission (by amendment by an act of 1921 [Laws 1921, p. 177] the powers of the Corporation Commission were transferred to the Railroad Commission and the Corporation Commission abolished), jurisdiction over "common carriers, railroads, street railroads, express companies, all car companies, freight lines, toll bridges, ferries, and steamboats and vehicles of all kinds engaged in the transportation of freight and passengers," and certain other public utilities not necessary to set out. The only question involved is whether the jurisdiction of the Commission extends to the railroad owned and operated by the appellant.

On behalf of appellant it is contended that it is not a common carrier, but a private carrier, and therefore not subject to the jurisdiction of the state Railroad Commission. The evidence is practically undisputed and establishes the following facts:

The appellant is a corporation created under the laws of the state of Louisiana. Its object, as set out in its articles of incorporation, is: "The object and purpose for which this corporation is organized and the nature of the business to be carried on by it are declared to be: To buy, own and sell timber and timber lands and other real estate; to purchase, build, own and operate sawmills, planing mills, shingle mills and other machinery; to manufacture, buy and sell lumber, shingles and other products of wood, and in connection therewith to purchase, build, own, maintain and operate tramroads, logging roads and railroads for the purpose of hauling timber, lumber and other material to and from a mill, or mills, for the manufacture thereof (any such railroad to be used for the purposes of such corporation and not to become a common carrier); also, in connection with such objects and purposes, to carry on, establish, maintain and operate a supply store, or stores; to deal in, buy and sell dry goods, groceries, hardware and all other kinds of merchandise and materials, including corn, cotton and country produce, and to prosecute and carry on all matters incidental to, or in any way properly connected with, said business as hereinbefore described; such business to be carried on in the state of Louisiana, or elsewhere, as said company may desire."

It constructed a sawmill in Nevada county, Ark., where it owned large timber rights and in order to transport the timber to its mill, to be manufactured into lumber, it constructed a standard railroad track to the mill, extending it as the timber near the mill was cut off. It owned all the locomotives and rolling stock necessary to operate it. It connected with the Missouri Pacific Railroad, a trunk line, at Reader, Ark. The entire road is in Nevada county, Ark.

In 1923 valuable discoveries of mineral oil were made in that county, 3 miles beyond the terminal of this railroad, whereupon appellant extended its line to this oil field, under a contract with Smitherman & McDonald, Inc. The right of way for the entire line of railroad was constructed on lands owned by the respondent, or acquired by purchase or grants from the owners of the lands. Prior to the extension to the oil field it used the railroad solely for transporting its timber to the mill and the manufactured articles to its junction with the Missouri Pacific Railroad at Reader, Ark.

On April 17, 1924, it entered into a contract with Smitherman & McDonald, Inc., one of the petitioners and appellees, which at that time was the only producer in that oil field, whereby it agreed to extend its road to the oil field, a distance of three miles, and obligated itself to transport, and the producer obligated itself to ship, all its oil and a minimum quantity of 1,000 barrels daily, equal to five tanks, at a certain rate, and the appellant would place them on the siding of the Missouri Pacific Railroad at Reader.

The contract expressly provides: "That party of the first part owns a private railroad or tramroad extending west from Reader, Ark., into Nevada county, Ark., and to

within approximately 3 miles of the Nevada county oil field, said road being presently used for sawmill purposes and which road party of the first part desires to extend into the said Nevada county oil field, if a profitable arrangement can be made for the shipment therefrom, over said line, oil in tank carload quantities, but does not desire to make the said road a common carrier."

Later similar contracts were made by it with the Keystone Company, George J. Ames, H. S. Autrey, and R. L. Autrey, the petitioners in this proceeding, except that it provided in the later contracts that only 1,000 barrels need be shipped from the entire oil field, but limited these later contracts to July 1, 1925. These contracts also provided: "Unless extended by mutual agreement, this contract shall cease and all rights and obligations hereunder terminate at 12 o'clock noon on the 1st day of July, 1925. Should the tramroad become a common carrier prior to the 1st day of July, 1925, then this contract shall at once cease and terminate. Should the tramroad be leased to the Missouri Pacific Railroad Company prior to the 1st day of July, 1925, then this lease and contract shall at once cease and terminate."

With the exception of two or three carloads of oil and material to the oil fields, transportation was limited to the parties under contract with the respondent. No bills of lading were issued by respondent for any cars transported, except for delivery on the siding of the Missouri Pacific Railroad, at Reader, and thereupon the Missouri Pacific Railroad Company issued its bills of lading to the shippers, as directed by them, and forwarded them to the shippers; the respondent collecting only its charges for transportation from the oil field to the siding of the Missouri Pacific Railroad at the rates specified in the contracts. The appellant was not at that time authorized under the laws of the state of Arkansas to exercise the right of eminent domain, nor did it at any time exercise it. By an act of the General Assembly approved February 13, 1925, the right of eminent domain was granted to owners of lumber mills for railroads for the transportation of their timber to the mills.

On these facts did the Arkansas Railroad Commission have authority to make the order in issue? The petition in issue was filed with the Railroad Commission on February 6, 1925, and the hearing, after due notice to respondent begun on February 26, 1925.

The law of the state confers jurisdiction on the Commission not only over railroads, but "all common carriers * * * and vehi-cles of all kinds engaged in the transportation of freight and passengers." The latter, of course, is limited to common carriers, and does not extend to transportation for the sole purpose of conducting material to and from its own mill. Pipe Line Cases, 234 U. S. 548, 562, 34 S. Ct. 956, 58 L. Ed. 1459.

[1] Do the facts warrant a finding that the railroad of appellant was a common carrier, or, as claimed by it, that it was only a private carrier? Whether it was an incorporated railroad, engaged as such, is immaterial, in view of the fact that under the laws of the state the jurisdiction of the commission extends to all common carriers. Mason v. Intercity Terminal Ry., 158 Ark. 542, 251 S. W. 10.

[2] A common carrier is usually defined as "one who undertakes for hire to transport goods for such as choose to employ him." 10 C. J. 39, and authorities there cited. A private carrier has been defined as "one who, without being engaged in the business of carrying as a public employment, undertakes to deliver goods in a particular case for hire or reward." 10 C. J. 38; Producers' Transp. Line v. Railroad Commission, 251 U. S. 228, 40 S. Ct. 131, 64 L. Ed. 239; Michigan Com. v. Duke, 266 U. S. 570, 45 S. Ct. 191, 69 L. Ed. 445; Edgar Lumber Co. v. Cornie Stave Co., 95 Ark. 449, 453, 130 S. W. 452; City Fuel Co. v. Torreyson, 145 Ark. 399, 402, 224 S. W. 727; Presson v. Vail Cooperage Co., 155 Ark. 424, 427, 245 S. W. 14; Valley Lumber Co. v. Westmoreland Bros., 159 Ark. 484, 252 S. W. 609.

The pleadings and the evidence establish that the respondent was willing to transport the oil for all producers in that field, who were willing to make a special contract, such as was made with Smitherman & McDonald, Inc., and the other producers. The answer of respondent is: "This defendant denies that it is discriminating against shippers and denies that it is refusing to ship for them unless they will sign ruinous contracts to obtain shipments, but states that it is ready and willing as a private carrier under special contract to haul oil for plaintiffs."

It is also alleged that it extended its line of railroad to the oil field of Nevada county for the sole purpose of transporting the oil from that field to the siding of the Missouri Pacific Railroad at Reader. Mr. McDonald, the superintendent of respondent, testified:

"Q. Have you ever refused to haul any oil for any one in carloads? A. Our position has been from the beginning that we would handle oil under special contract, and

we have moved oil every time it has been offered to us.

"Q. Have you refused to haul any oil well supplies into the field? A. I do not think so.

"Q. All carload shipments of pipe and oil, machinery, and such things as that, that have been tendered, you have accepted as far as you know? A. Yes, sir.

"Q. And all outward shipments that have been tendered you have accepted? A. Yes, sir."

On re-examination by counsel for respondent, he stated that they have only moved oil for the Keystone Company and Smitherman & McDonald, Inc., and oil well supplies for George Ames and Autrey under contracts with each of them. On similar facts it was held in Producers' Transp. Co. v. R. R. Commission, 251 U. S. 228, 40 S. Ct. 131, 64 L. Ed. 239, that the company was subject to regulation by the state Railroad Commission.

[3] One who carries and holds itself out to the public that it will transport freight for any one who offers it cannot escape liability as a common carrier by insisting on a private contract with the shipper. To permit it would be a fraud on the public.

[4] In determining whether one is a common carrier or a public utility, courts will be governed, not merely whether authorized to be such, but whether it elected to act as a common carrier. In Clear Creek, etc., Co. v. Fort Smith Spelter Co., 148 Ark. 260, 269, 272, 230 S. W. 897, 900, it was held:

"The question, therefore, is not merely whether appellant was authorized to operate as a public utility, but whether it elected to do so under the power they conferred. * * * In other words, appellant was not necessarily a public utility because its charter authorized it to become one in the operation of its business, nor was it under its charter a public service corporation merely by the operation of a private business of the kind enumerated. * * * Our conclusion is, therefore, that appellant did not become a public utility merely by force of the statute itself, without anything being done pursuant to the terms of that statute or in any other respect to make itself a public utility. But the conclusion is inevitable from the proper construction of the statute that, if a corporation organized for the purposes of carrying on the business mentioned in the statute takes advantage of the terms of the statute, it becomes a public utility, subject to the state's control."

This was approved in Ft. Smith Spelter Co. v. Clear Creek Oil & Gas Co., 267 U. S. 231, 45 S. Ct. 263, 69 L. Ed. ——, opinion filed March 2, 1925.

In Michigan Com. v. Duke, 266 U. S. 570, 45 S. Ct. 191, 69 L. Ed. 445, relied on by appellant, the carrier was engaged solely in transportation under three contracts of automobile bodies from Detroit, Mich., to Toledo, Ohio, and it was held that he was a private carrier and it was beyond the power of the state to convert him into a common carrier.

Piper v. Blair (No. 15058) Report of the Interstate Commerce Commission, filed February 2, 1925, relied on by respondent, is inapplicable, as the only question before the Commission, and the only one the Commission had jurisdiction of, was whether respondent's railroad was a carrier by railroad, and therefore subject to the jurisdiction of the Interstate Commerce Commission, and it was held it was not a carrier by railroad, not having been incorporated as such, and had no right of eminent domain.

[5] In the instant case, the respondent was willing to transport all freight offered, but insisted on a contract for the sole purpose of evading liability or control by the state, as a common carrier. If respondent's contention is the law, any corporation not incorporated as a railroad or an individual may construct a railroad, and when it does so without exercising the right of eminent domain, although transporting freight for all who offer it, provided the contracts contain a clause that it is not a common carrier, but a private carrier, and will only transport articles on a special contract, it may operate a railroad and prevent regulation by the state, as a common carrier.

In my opinion this may not be done. Terminal Taxicab Co. v. District of Columbia, 241 U. S. 252, 36 S. Ct. 583, 60 L. Ed. 984, Ann. Cas. 1916D, 765; United States v. Brooklyn Terminal, 249 U. S. 296, 39 S. Ct. 283, 63 L. Ed. 613, 6 A. L. R. 527.

The order of the state Railroad Commission was right, and is affirmed.