[No. 42788. En Banc. February 14, 1974.]

FARM SUPPLY DISTRIBUTORS, INC., *Respondent*, v. WASHINGTON UTILITIES & TRANSPORTATION COMMISSION *et al.*, *Petitioners*, PACIFIC INTERMOUNTAIN EXPRESS & CONSOLIDATED FREIGHTWAYS CORPORATION OF DELAWARE, *Appellant.*

*Slade Gorton, Attorney General,* and *James R. Cunningham, Assistant,* for petitioners.

*Hartman & McGuire,* by *Boyd Hartman,* for appellant.

STAFFORD, J.—In May 1968, Farm Supply Distributors, Inc. filed an application with the Washington Utilities and Transportation Commission seeking authority to operate as a contract carrier in transporting certain commodities for an Eastern Washington corporation. Several common carriers contested the application and a hearing was held.

Although the hearing examiner recommended approval, the Commission reversed the proposed order and denied the permit. Farm Supply's appeal to the superior court resulted in a reversal of the Commission's decision and the Court of Appeals, Division Three, affirmed the trial court. *Farm Supply Distribs. Inc. v. State Util. & Transp. Comm'n,* 8 Wn. App. 448, 506 P.2d 1306 (1973). In its opinion, the Court of Appeals stated, at pages 451-53:

> The question to be determined at this level is not whether the Commission's findings were clearly erroneous. The question is whether the superior court's decision that the Commission's findings were clearly erroneous is supported by substantial evidence. . . .
>
> . . .
>
> *We hold that the clearly erroneous test* of judicial review in RCW 34.04.130 *applies only to the superior court.*

(Italics ours.) This holding runs counter to that expressed by the Court of Appeals, Division Two, in *Williams v.*

*Young,* 6 Wn. App. 494, 494 P.2d 508 (1972). We granted the Commission's petition for review to consider the scope of appellate review of administrative decisions.

■ Each level of the judiciary actually reviews administrative decisions in an appellate capacity. Most courts that have considered the subject have held that appellate courts stand in the same position as trial courts when reviewing the decision of an administrative agency. *Smith v. O'Keefe,* 9 Ill. App. 3d 814, 293 N.E.2d 142 (1973); *Bixby v. Pierno,* 4 Cal. 3d 130, 481 P.2d 242, 93 Cal. Rptr. 234 (1971); *Wright v. Insurance Comm'r,* 252 Ore. 283, 449 P.2d 419 (1969). Our own decisions in *Ancheta v. Daly,* 77 Wn.2d 255, 461 P.2d 531 (1969), and *Newbury v. Department of Pub. Assist.,* 80 Wn.2d 13, 491 P.2d 235 (1971), call for such a result. This is particularly true when the question before the court is whether the findings, conclusions or decisions of an agency are "clearly erroneous." In a contested case there may well be "substantial evidence" to support the positions of both sides. If, on appeal, either a trial or an appellate court were to limit its inquiry to whether there was "substantial evidence" to support administrative findings, conclusions or decisions it would be only a short step to ignoring the deference that must be accorded the "expertise" of the administrative agency or to overlooking the "public policy" factor that by law must be considered. *Ancheta v. Daly, supra.* We hold that the "clearly erroneous" test prescribed by RCW 34.04.130(6)(c) applies to the review of administrative decisions by trial courts and appellate courts as well.

■ Appellant contends that the trial court improperly substituted its judgment for that of the Commission. We agree that courts should not interfere with or substitute their judgment for a decision of the Commission when the Commission has acted properly within the sphere of its purpose, expertise and competence. *Herrett Trucking Co. v. Public Serv. Comm'n,* 61 Wn.2d 234, 377 P.2d 871 (1963); *see also Ancheta v. Daly, supra.* The recognition and preservation of this delicate relationship between the judiciary

and administrative bodies is basic to the proper operation of the field of administrative law. Clearly, this is one reason why the legislature abandoned the "substantial evidence" rule in 1967 and prescribed as a standard for judicial review the more strict "clearly erroneous" concept. *Ancheta v. Daly, supra.* Thus, under the current test more is required for the reversal of an administrative decision than a court's mere act of weighing the evidence differently than did the Commission, or merely disagreeing with the Commission's conclusions. Viewing the record in light of the foregoing basic concept of administrative law, we note that several of the trial court's findings of fact indicate a determination that the findings of the *hearing examiner* were "fully supported by the evidence" of record whereas the contrary findings of the *Commission* were not. This led the trial court to conclude that the Commission's decision was "clearly erroneous." The trial court's views are couched in such terms that we are unable to determine whether it was of a definite firm conviction that a mistake had been committed (*i.e.*, the "clearly erroneous" test), whether it incorrectly used the "substantial evidence" test, or whether it incorrectly used some combination of the two.

Before a court may hold findings, conclusions or decisions of an administrative agency "clearly erroneous," it must determine that even though there may be substantial evidence to support the agency's action, or substantial evidence to the contrary, the court is, on the entire evidence, "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 92 L. Ed. 746, 68 S. Ct. 525 (1948); *Ancheta v. Daly, supra.* The court may not substitute its judgment for that of the agency, but must give deference to the expertise of the administrative tribunal. *Ancheta v. Daly, supra.* Based on the record before us, and considering the trial court's findings of fact, we cannot say the "clearly erroneous" test was properly applied. It is more probable that the "substantial evidence" test or its combination with the "clearly erroneous" test

was employed incorrectly. Insofar as the Court of Appeals is concerned, it is unmistakable that it erroneously employed the "substantial evidence" test.

Appellant has assigned error to the trial court's finding that the service proposed by Farm Supply was that of a "contract carrier." RCW 81.80.010(5) defines a "contract carrier" as follows:

> "Contract carrier" shall include all motor vehicle operators not included under the terms "common carrier" and "private carrier" as herein defined in paragraph (4) and paragraph (6), *and further shall include* any person who under special and individual contracts or agreements transports property by motor vehicle for compensation.

(Italics ours.) The Commission argues that under the foregoing definition a "contract carrier" must refrain from holding out its services to the general public and furthermore it must demonstrate that the proposed services are tailored to the unique transportation needs of a particular shipper.

We do not agree with the Commission's conglomerate definition of "contract carrier." A careful reading of RCW 81.80.010(5) makes it evident that two separate categories of operators may be classified as "contract carriers." In the first category are those who are neither "common carriers"[1] nor "private carriers."[2] The second category is composed of those who "under special and individual contracts or agreements [transport] property by motor vehicle for compensation." It is incorrect to say, in defining the

[1] RCW 81.80.010(4)

" 'Common carrier' means any person who undertakes to transport property for the general public by motor vehicles for compensation, whether over regular or irregular routes, or regular or irregular schedules, including motor vehicle operations of other carriers by rail or water and of express or forwarding companies."

[2] RCW 81.80.010(6)

"A 'private carrier' is a person who transports by his own motor vehicle, with or without compensation therefor, property which is owned or is being bought or sold by such person, or property of which such person is the seller, purchaser, lessee or bailee where such transportation is incidental to and in furtherance of some other primary business conducted by such person in good faith."

term "contract carriers," that there is only one category of "contract carrier" and that the proposed operation must be under a rigid type of special and individual contract or agreement offering a very specialized type of service. The statute does not so provide. Use of the phrase "and further shall include" preceding the clause covering "special and individual contracts or agreements" indicates that the legislature contemplated two distinct categories of "contract carriers," the first of which *does not require the existence of a special and individual contract or agreement.* We recognized such an alternative definition in *Trudeau v. Pacific States Box & Basket Co.,* 20 Wn.2d 561, 569-75, 148 P.2d 453 (1944). In that case we held that even though an individual held a common carrier permit, his services were in fact contract carriage. The decision was not based on the fact that the carrier operated under special and individual contracts, but rather on the fact that his services did not fall within the definition of either common or private carriage. Legislative intent is deduced from what is said (*Schneider v. Forcier,* 67 Wn.2d 161, 406 P.2d 935 (1965)) and words are given their ordinary meaning (*Bixler v. Hille,* 80 Wn.2d 668, 497 P.2d 594 (1972)). If RCW 81.80.010(5) is to have any meaning other than the obvious, the legislature must make that change.

The Commission ignored the alternative definition of "contract carrier," and examined only the second-phase definition concerned with "special and individual contracts or agreements" to transport property. This led it to conclude that the operation proposed by Farm Supply was that of a common carrier. We cannot say what the Commission would have found had the alternative definition been used. We do hold, however, that the Commission must reexamine the facts in light of the properly applicable law and determine whether respondent is a contract carrier under the first-phase definition (*i.e.,* " 'Contract carrier' shall include all motor vehicle operators not included under the terms 'common carrier' and 'private carrier' . . .").

Inasmuch as the Commission found that Farm Supply was a common carrier it did not reach the point of deciding whether Farm Supply's proposed operation was consistent with the public interest. The Commission's order states in part:

> Applicant herein has offered a good deal of evidence in support of its burden to establish public interest; but since the Commission has concluded, and here reaffirms, that applicant has not shown it proposes to offer a contract carrier service to its supporting shipper, *this evidence need not be examined.*

(Italics ours.) Thus, we hold that if it is determined that Farm Supply is a "contract carrier," the Commission must consider the proffered evidence, admittedly rejected, on the subject of public interest as required by RCW 81.80.070.[3]

In the final analysis, on remand the Commission must, in light of our interpretation of RCW 81.80.010(5), again review the evidence to determine whether Farm Supply is a "contract carrier" under the phase one test. If it is decided that Farm Supply is a "contract carrier," the Commission must review and consider the evidence to determine whether the proposed operation is consistent with the public interest as provided in RCW 81.80.070. Finally, the Commission must reevaluate the entire evidence to decide whether the proposed service is consistent with the legislative policy expressed in RCW 81.80.020.

 In the normal course of events a reversal would call

---

[3]"RCW 81.80.070 Grant or denial of permit. No 'common carrier,' 'contract carrier,' or 'temporary carrier' shall operate for the transportation of property for compensation in this state without first obtaining from the commission a permit so to do. . . .

"*A permit or extension thereof shall be issued to any qualified applicant therefor,* authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing, and able properly to perform the services proposed and conform to the provisions of this chapter and the requirements, rules and regulations of the commission thereunder, *and that such operations will be consistent with the public interest, and, in the case of common carriers, that the same are or will be required by the present or future public convenience and necessity, otherwise such application shall be denied.*" (Italics ours.)

for a remand to the court below. However, this case involves the review of a proceeding in which an administrative agency has proceeded on an incorrect interpretation of a law basic to its decision. Thus, it is imperative that the matter be remanded to the Commission to enable it to make findings of fact heretofore not made and apply thereto the correct law as well as the necessary administrative expertise and legislative policy considerations that will result in a proper administrative determination.

HALE, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.