[No. 3051–2–III.   Division Three.   January 3, 1980.]

GEORGIA JOHNSTON, *Respondent,* v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Appellant.*

*Slade Gorton, Attorney General,* and *Peter J. Bezek* and *Christine Gregoire, Assistants,* for appellant.

*Lewis M. Wilson* and *Goss, Moe, Sampson & Wilson,* for respondent.

*Patrick McIntyre* of *Evergreen Legal Services,* amicus curiae.

McINTURFF, J.—This is an appeal from a decision of the Superior Court reversing the Department of Social and Health Services' decision denying a claim for medical assistance. This claim involves approximately $27,000—the cost of Mr. Johnston's hospitalization from July 24, 1977, through August 29, 1977.

In August 1977, the respondent, Georgia Johnston, applied for public assistance with the appellant, Department of Social and Health Services (the Department) after a motorcycle accident on July 24, 1977, left her husband hospitalized in a comatose state.

The requirements for eligibility were outlined to Mrs. Johnston during her first interview with the Department on August 30. On September 20, the Department sent a letter to Mrs. Johnston requesting additional documentation of the family assets. A second interview with the Department occurred on September 28, but Mrs. Johnston was still unable to satisfy the Department's demands for certain documents.

The Department then referred the Johnstons' application to another agency to determine from county records the extent of the Johnstons' nonexempt real estate assets. A report from that agency indicated the Johnstons were purchasing additional real estate not previously disclosed; however, this information was false.

The Department sent a second letter to Mrs. Johnston on October 3, 1977, explaining the applicant's duty to clarify data regarding the value of nonexempt resources. The letter also explained the applicant's responsibility to "participate" in reducing the need for public assistance through the sale of all nonexempt real estate. The Department also recommended the appointment of a guardian for Mr. Johnston.

Being unfamiliar with the family business affairs, Mrs. Johnston was reluctant to "rush into things." She resisted the Department's recommendation to appoint a guardian for her husband because it was felt he might regain consciousness at any time. Mrs. Johnston also feared the effect that a sale of the family assets might have on her husband's chances for recovery once he regained consciousness.

By letter of October 13, Mrs. Johnston, through her attorney, sought the Department's cooperation in the resolution of this matter, explaining that she had supplied the Department with all the available documents. With no resources to hire an appraiser, the letter expressed Mrs. Johnston's hesitancy to sell her property without an opinion from the Department as to its value, "for fear you will deny her for selling below its value." She also explained that her mother–in–law in fact owned some of the property

the Department had attributed to her as a nonexempt resource.

On October 14, 1977, Mrs. Johnston received a letter from the Department denying her application for medical assistance. Following a hearing pursuant to RCW 74.08.070, the hearing examiner affirmed the Department's denial. The Superior Court, however, declared the Department's findings "clearly erroneous" and this appeal by the Department followed.

Judicial review of the Department's decision in this instance is governed by RCW 34.04.130(6)(e), which provides:

> (6) The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
> . . .
> (e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or

■■ The Department contends the trial court erred in its application of the clearly erroneous test because it failed to read the administrative transcript. The error, however, is harmless because each level of the judiciary reviews the administrative decision de novo. *Farm Supply Distribs., Inc. v. State Util. & Transp. Comm'n*, 83 Wn.2d 446, 448, 518 P.2d 1237 (1974). Upon appeal from a superior court's application of the clearly erroneous standard, the appellate court applies the same standard directly to the record of the administrative proceedings.[1]

Before a court may hold findings, conclusions or decisions of an administrative agency "clearly erroneous," it

[1]*Standow v. Spokane*, 88 Wn.2d 624, 637, 564 P.2d 1145 (1977); *Norway Hill Preservation & Protection Ass'n v. King County Council*, 87 Wn.2d 267, 276, 552 P.2d 674 (1976); *Department of Ecology v. Ballard Elks Lodge No. 827*, 84 Wn.2d 551, 555-56, 527 P.2d 1121 (1974); *Farm Supply Distribs., Inc. v. State Util. & Transp. Comm'n*, 83 Wn.2d 446, 448, 518 P.2d 1237 (1974); *Levold v. Department of Employment Security*, 24 Wn. App. 472, 475, 604 P.2d 175 (1979).

must determine that even though there may be substantial evidence to support the agency's action, or substantial evidence to the contrary, the court is, on the entire evidence, "left with the definite and firm conviction that a mistake has been committed."

*Farm Supply Distribs., Inc. v. State Util. & Transp. Comm'n, supra* at 449.[2]

Based on the record before us, we hold the firm and definite conviction that a mistake has been made in denying Mrs. Johnston's claim for medical assistance.

The Department provides a program of medical care designed to meet the health care needs of eligible individuals who do not have the resources to meet the full cost of medical care WAC 388–81–005. WAC 388–83–005 through 065 are determinative of the applicant's eligibility for medical assistance. WAC 388–83–060 provides:

(1) The possession of a non–exempt resource affects eligibility for medical care. . . .

(2) In assigning the value to non–exempt real property as described in WAC 388–28–455, the following sequence shall be be followed:

(a) First consideration shall be given to the sale of non–exempt real property based on the "quick sale value".

(b) If the sale is not possible, rental or lease must be considered with the income derived from such rental or lease being considered available to meet the cost of medical care.

(c) If the property cannot be sold, rented, or leased and if the applicant has used reasonable diligence in seeking a purchaser, renter, or leasee, then no resource value for this property shall be considered to exist for the purpose of determining eligibility. The property shall remain on the market for as long as the applicant is certified for medical care.

---

[2]*United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 92 L. Ed. 746, 68 S. Ct. 525 (1948); *Ancheta v. Daly,* 77 Wn.2d 255, 259, 461 P.2d 531 (1969); *Department of Ecology v. Ballard Elks Lodge No. 827,* 84 Wn.2d 551, 555–56, 527 P.2d 1121 (1974).

Of particular importance to this appeal is WAC 388–83–060(2)(c)(i):

If the applicant refuses to dispose of his property or refuses to attempt to dispose of his property as outlined in (2),(a),(b), and (c) above, his application for medical assistance shall be denied.

WAC 388–84–020 similarly states:

(1) An application for medical care shall be denied when:

. . .

(d) The applicant refuses to dispose of non–exempt resources or refuses to attempt to dispose of such resources.

The application process here was unfortunately rife with miscommunication and misinformation. Mrs. Johnston was suddenly confronted with a situation of overwhelming emotional and financial dimensions resulting from the accident which left her husband comatose and partially paralyzed. Because her husband had managed the business affairs while she tended the family's six children, Mrs. Johnston had understandable difficulty supplying the Department with the requested information.

The Department denied Mrs. Johnston's application for medical assistance not because she had refused to sell the family's nonexempt real estate, but "because we have no information from you to indicate that 'participation' is *less than* medical need." (Italics ours.) The letter of denial explained the term "participation" in this way:

The participation amount is the total value of your non–exempt resource plus excess income (any net income over the 7 person medical standard of $599 per month), if any, for each month July to December 1977. WAC 388–83–045(2)(a) and WAC 388–83–060(1)(2).

The value assigned to a non–exempt resource and possession is fair market value. Take, for example, the house on Marietta. You have it insured for $30,000. Because insurance companies do not intentionally overinsure, one can assume the fair market value is more than $30,000 including the lot. The mortgage balance in August, 1977, was $13,503.57. Furthermore, real estate values continue

to appreciate. One can understand your reluctance to sell this income–producing property. *Sale is not mandatory, but your equity in the fair market value* [of the house on Marietta] *is a non–exempt resource.*

You and your husband have invested more than $2,000 in the property on Magnolia. If your husband completes the renovation, it has good income potential for you, either by selling or renting. In its present condition the property cannot be called *non–salable.* Someone else may be willing to purchase it for the same reasons your husband purchased it. As with your other house, you have chosen not to list this property for quick sale. *As before, the sale is not mandatory, but your equity in the fair market value of this property also is non–exempt.*

(Italics ours.)

Mrs. Johnston then sought a fair hearing pursuant to RCW 74.08.070.[3] The hearing examiner found the Johnstons owned three pieces of nonexempt real property with a fair market value of $43,500. The decision to deny Mrs. Johnston's application was affirmed by the hearing examiner because Mrs. Johnston had "refused to list or dispose of any of these properties."

From these proceedings, we see that the Department denied Mrs. Johnston's application for want of information regarding her ability to "participate" in reducing the need for medical assistance, but in the same letter she was told it was not mandatory to sell the nonexempt real estate. The hearing examiner, on the other hand, affirmed the Department's denial because Mrs. Johnston had refused to sell the family's nonexempt real estate. Clearly, a mistake has been made.

Although Mrs. Johnston was reluctant to sell the family real estate, the letter from her attorney was indicative of a willingness to cooperate with the Department in resolving

---

[3]RCW 74.08.070 (in effect at the time in question):

"Any applicant or recipient feeling himself aggrieved by the decision of the department or any authorized agency of the department shall have the right to a fair hearing to be conducted by the director of the department or by a duly appointed, qualified and acting supervisor thereof, or by an examiner especially appointed by the director for such purpose."

the question of eligibility. Furthermore, there was a substantial misunderstanding regarding the extent of the Johnstons' nonexempt resources. The hearing examiner found the Johnstons owned three pieces of nonexempt real estate with a fair market value of $43,500; however, by the time this case reached the Superior Court, counsel for the Department stipulated to the Johnstons' ownership of only one piece of nonexempt real estate valued at $11,000, with an equity of $3,000. This asset was the separate property of Mr. Johnston. Judge Del Cary Smith, Jr., said it well:

> First of all, there was a substantial error with respect to all of these properties, some of it understandable, . . . secondly, it seems to me that there was some information, some misinformation, conveyed by the worker to Mrs. Johnston, and that Mrs. Johnston's failure to perhaps literally comply with all of the requirement is excusable; thirdly, I don't think the evidence is sufficient to prove that there was a refusal to sell or to make it available. It does suggest that there was some, perhaps, foot dragging on her part, but I think there is a real question as to her authority to sell in any event. . . . Certainly on the face of it, the $3,000.00 equity was separate property of her husband; to sell it, she would have had to start guardianship proceedings. It really wasn't her property to sell at that point, even if it were community property, she couldn't sell it without a guardianship. So I don't think the finding can be made that she, under these circumstances, has refused to sell.

Following a decision of the Superior Court, Mrs. Johnston secured a power of attorney from her husband and the property was sold, realizing a profit of $2,042.19. We assume this sum is now available for "participation" in the cost of Mr. Johnston's medical care.

■ The Department recommends that we remand this case for a determination of whether Mrs. Johnston was confused by the actions of the Department. We decline. WAC 388–83–060(2)(c)(i) and WAC 388–84–020, quoted above, direct the Department to deny an application for medical care when the applicant refuses to dispose of the

nonexempt real estate. This provision assumes the applicant's continuing refusal. We find nothing in the statutes, case law, or regulations which declares the Department's decision final, forever barring the applicant from qualifying for public assistance. Here, the sole, nonexempt asset has been sold and the profits are now available to reduce the Johnstons' need for public assistance.

Judicial review under the clearly erroneous standard set out in RCW 34.04.130(6)(e) mandates a review of the entire record. It also requires consideration of the public policy contained in the applicable legislation. The statement found in WAC 388–81–030 seems particularly appropriate:

> The need for medical care is not subject to inflexible determination which can be described in policy, rule or regulation. Professional judgment must be exercised in each case and exceptions granted in those instances where unusual need and circumstances exist. Where undue hardship may result to an individual, if medical care services are denied by strict application of a rule or regulation, exceptions to policy may be made according to WAC 388–20–020.

Here, probably because of communicational and emotional problems, there was not strict compliance with the laws and regulations governing the Department. WAC 388–81–030 was designed to accommodate this kind of exceptional circumstance—the application of that not so common, common sense.

The hearing examiner's finding that Mrs. Johnston refused to list nonexempt property was clearly erroneous.

Having decided the merits of this appeal, we turn to the question of attorney's fees. Attorney's fees were awarded to Mrs. Johnston for the work her attorney performed in Superior Court. She argues the award should have included reasonable compensation for her attorney's services at the administrative level. She is joined in this argument by Evergreen Legal Services as attorney for amicus curiae, Shelly Greenig.

The amicus curiae brief raises some important considerations relative to the need for effective representation

at the administrative hearing level. These considerations, however, are best left to the legislature. As we read the statute, the legislature presently limits the award of attorney's fees to proceedings in superior court, the Court of Appeals, or the Supreme Court. *Whitehead v. Department of Social & Health Servs.*, 92 Wn.2d 265, 269–70, 595 P.2d 926 (1979); RCW 74.08.080.[4]

Judgment of the Superior Court is affirmed, but the case is remanded to that court to determine reasonable attorney's fees on this appeal.

GREEN, C.J., and ROE, J., concur.

---

[4]RCW 74.08.080:

"In the event an appellant feels himself aggrieved by the decision rendered in the hearing provided for in RCW 74.08.070, he shall have the right to petition the superior court for judicial review in accordance with the provisions of chapter 34.04 RCW, as now or hereafter amended. Either party may appeal from the decision of the superior court to the supreme court or the court of appeals of the state: *Provided,* That no filing fee shall be collected of the appellant and no bond shall be required on any appeal under this chapter. *In the event that the superior court, the court of appeals, or the supreme court renders a decision in favor of the appellant, said appellant shall be entitled to reasonable attorney's fees and costs.* If a decision of the court is made in favor of the appellant, assistance shall be paid from date of the denial of the application or forty–five days following the date of application, whichever is sooner; or in the case of a recipient, from the effective date of the initial departmental county office decision." (Some italics ours.)